**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES F. MCAULIFFE | ) | Chapter 7 |
| | ) | Case No. 16-11089-MSH |
| Debtor. | ) | |

**JOINT STIPULATION REGARDING CHAPTER 7 TRUSTEE'S MOTION**
**TO COMPEL PRODUCTION OF DOCUMENTS**

A.  **INTRODUCTION**

John O. Desmond, the duly appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate of James F. McAuliffe (the "Debtor"), and the Debtor (collectively the "Parties") respectfully file this joint stipulation pursuant to MLBR 7037-1(c) and in accordance with this Court's February 28, 2017 Order on the Joint Motion filed by Debtor James F. McAuliffe to Extend Time to File Documents [Docket No. 69].

The Trustee is currently investigating the financial affairs of the Debtor. As set forth in the Trustee's Motion to Compel, the Debtor is a sophisticated real estate developer who was the owner and operator of numerous real estate development entities. According to the Debtor's Schedule F filed on March 28, 2016, the Debtor scheduled nearly $42 million of unsecured debt, most of which related to failed real estate developments. The Debtor is currently employed as the chief executive officer of a Boston based solar energy development firm, Omni Navitas Holdings, LLC ("Omni"). Despite his title as CEO, the Debtor maintains that his wife and not he, holds a 50% ownership interest in Omni through Cambridge Omni, LLC. Notwithstanding the Debtor's assertion, the Trustee has obtained documents from creditors of the Debtor indicating that the Debtor, and not his wife, held himself out as a 50% owner of Omni.

7882373v3

Therefore, part of the Trustee's investigation relates to the Debtor's interest in Omni and the value of that interest. In addition, the Trustee has been provided with documentation from the Debtor evidencing substantial transfers from the Omni operating account between 2014 and 2016 to or for the benefit of the Debtor's real estate development company, Abbott Real Estate Development, LLC ("Abbott") and entities and individuals affiliated with Abbott. There were also a large number of ATM deposits to the Debtor's personal account held at Bank of America in the two year period prior to the Petition Date for which the Trustee lacks source documents.

    **B.**    **DISCOVERY CONFERENCE**

On September 8, 2016, Counsel for the Trustee and Counsel for the Debtor held an initial telephonic conference regarding the Debtor's document production in response to the Trustee's July 7, 2016 letter requesting the production of documents by the Debtor (the "Initial Conference"). Following the Initial Conference, the Parties continued to discuss the Debtor's production of documents in response to the Trustee's July 7, 2016 letter via various telephonic and e-mail communications and met in person on at least one occasion in an effort to limit the scope of the discovery dispute. On September 30, 2016, the Parties held a second telephonic conference regarding the Debtor's outstanding document production and whether the Debtor intended to produce the remaining documents requested by the Trustee's July 7, 2016 letter. In furtherance of the Parties September 30, 2016 telephonic conference, on October 12, 2016 the Trustee sent a letter to the Debtor regarding outstanding document production. In response, the Debtor made a partial production of information and documents on November 9, 2016. On December 22, 2016, the Trustee sent an additional letter to the Debtor regarding remaining outstanding document production. On February 9, 2017, Counsel for the Trustee held a telephonic conference with Counsel for the Debtor regarding the remaining outstanding

discovery issues. Counsel to the Trustee advised Counsel to the Debtor that the Trustee would be filing a Motion to Compel in light of the parties' inability to resolve all discovery disputes.

### C.   RESOLVED DISCOVERY MATTERS

Pursuant to the Parties Initial Conference and subsequent discussions concerning the Debtor's production of documents, the Parties were able to reach agreement with respect to the production of: (1) bank account documentation, including statements and check images for certain accounts, including, those held in the Debtor's name and Omni Navitas Holdings LLC; (2) Federal and State Tax Returns for the Debtor, Omni Navitas Holdings LLC, and Abbott Real Estate Development, LLC; and (3) contact information for individuals and entities requested by the Trustee.

### D.   REMAINING DISCOVERY DISPUTES

Despite the Parties best efforts to resolve all discovery disputes, the following issues remain outstanding and in dispute.

**Issue No. 1**

*A complete list of all financial accounts for all of the Debtor's business entities identified on pages 9-15 of the Debtor's amended Statement of Financial Affairs [Docket No. 19] and bank account statements and check images relating to said accounts for the time period of January 1, 2012 through July 7, 2016.*

<u>The Trustee's Position</u>

The Trustee maintains that he is entitled to the production of a list of all financial accounts of all of the Debtor's business entities and associated bank account statements and check images in order to fully assess the Debtor's financial condition prior to bankruptcy. See <u>In re Ridley</u>, 115 B.R. 731, 735 (Bankr. D. Mass. 1990) ("the trustee and creditors are entitled to

3

complete and accurate information showing what property has passed through the debtor's hands during the period prior to bankruptcy . . . The production of appropriate records is the quid pro quo for the debtor's relief from substantially all financial obligations through a discharge in bankruptcy."). The Debtor has indicated in an email communication dated February 17, 2017, that was forwarded to Counsel for the Trustee from Counsel for the Debtor, that only two bank accounts, Abbott Real Estate Development, LLC ending in account number 3722 and Abbott Homes LLC ending in account number 1755 existed with respect to Abbott and the affiliated Abbott entities listed on the Debtor's SOFA. The Trustee will accept verification by the Debtor within this Joint Stipulation that these two accounts are the only accounts which were created for Abbott and the affiliated Abbott entities.

<u>The Debtor's Position</u>

Debtor hereby verifies that with respect to those entities identified on pages 9 through 15 of the Debtor's SOFA, a bank account or other financial account was only opened in the name of: Abbott Real Estate Development, LLC as held at Bank of America and ending in account number 3722 and Abbott Homes, LLC, as held at Bank of America and ending in account number 1755.

**Issue No. 2**

*All valuation documents, offerings, solicitations, agreements, current financials, balance sheets, and financial projections for Omni Navitas Holdings LLC ("Omni") for the time period of January 1, 2013 to the present*

<u>The Trustee's Position</u>

The Trustee maintains that he is entitled to the production of all valuation documents, offerings, solicitations, agreements, current financials, balance sheets, and financial projections

4

for Omni in order to fully assess the value of the Debtor's potential interest in Omni as referenced above.  See In re Ridley, supra.  The Trustee's request is based in part upon the Debtor's January 2, 2015 Memorandum provided to his creditors, Tom Franklin and Art Klipfel, offering "an interest in [Debtor's] share of Omni Navitas Holdings, LLC" in satisfaction of their indebtedness.  Included in the January 2, 2015 Memorandum is a detailed valuation projection for Omni Navitas over a 5-year period—including various financial assumptions.  The January 2, 2015 Memorandum also includes a detailed 5-year cash flow analysis, with subcategories including, but not limited to, gross income, gross salaries, and office overhead.  The Trustee finds it extremely difficult to believe that given the sophisticated nature of the data projected over multiple years that no underlying documents exist to account for the valuation figures and cash flow analysis provided to potential investors in the January 2, 2015 Memorandum and that there are no updated valuation documents, financial projections, and other documents related to the value of Omni.  The Debtor has only provided Omni tax returns but no financial statements, balance sheets, profit or loss statements, or other similar documents related to the current financial condition of Omni.

    The Debtor's Position

    The Debtor asserts that all documents which exist have been produced.  In his November 9, 2016 response letter the Debtor stated, "There are no valuation documents. We have provided you with all of Omni Navitas' tax returns and balance sheets."  Again on January 25, 2017, the Debtor provided, "All numbers in the January 2, 2015 [Memorandum] were projections and, by their nature, speculative.  And all calculations were contained in the memo. Debtor has provided you with Omni Navitas tax returns for 2013, 2014, and 2015. These are the actual numbers for how the company performed. These are the true basis for valuating a company's worth, not

5

projections. If Omni Navitas were to apply for a bank loan, the bank would base its decision on these returns."

**Issue No. 3**

*All agreements entered into between Omni and any third-party pursuant to which Omni is expected to generate revenue; including, without limitation Omni's agreement with the MBTA.*

<u>The Trustee's Position</u>

The Trustee maintains that the requested agreements are necessary in order to fully assess the value of the Debtor's potential 50% interest in Omni. As noted above, "the trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands during the period prior to bankruptcy." See <u>In re Ridley,</u> <u>supra</u>. The Trustee asserts that the Debtor has still failed to produce its agreement with the MBTA which Counsel to the Trustee discovered in a press report, or any other agreements which, currently or will in the future, generate revenue for Omni.

<u>The Debtor's Position</u>

The Debtor asserts that the MBTA agreement, relating to the post-petition activities of Omni is irrelevant. In his November 9, 2016 response letter the Debtor provided a limited response, stating, "Prior to McAuliffe's filing, there were only three agreements signed with an investor . . . ." On January 25, 2017, the Debtor further provided, "Debtor assumed that Request 9 was for all agreements signed prior to Debtor's filing, which was March 28, 2016. The MBTA issued a public bid on April 6, 2016 called "Solar Infrastructure Lease Opportunity". This bid called for all responses to be submitted by 12:00 PM, June 10, 2016. Omni Navitas submitted a response to this bid on that date and was selected shortly thereafter. A lease was not signed with the MBTA until November 1, 2016."

6

**Issue No. 4**

*All communications, including e-mails, pertaining to the formation of Omni and Cambridge Omni LLC and the allocation of membership interests in Omni and Cambridge Omni LLC.*

<u>The Trustee's Position</u>

The documents requested by the Trustee are necessary to evaluate whether the Debtor has any interest in Omni and Cambridge Omni LLC. Despite his title as CEO and having previously identified himself as a "founder" on the company's website, the Debtor maintains that his wife and not he, holds a 50% ownership interest in Omni through Cambridge Omni, LLC. Notwithstanding the Debtor's assertion, the Trustee has obtained documents from creditors of the Debtor indicating that the Debtor, and not his wife, held himself out as a 50% owner of Omni. Furthermore, the response provided by the Debtor is incomplete, the Debtor merely indicates that there are no internal or external memos responsive to this request. The Debtor's response does not address whether electronic communications such as e-mail communications exist regarding ownership interests in Omni and Cambridge Omni LLC, or the steps the Debtor has undertaken to obtain such documentation. The Trustee struggles with the notion that there is no written or electronic communication concerning the allocation of ownership interests in Omni particularly where several of the interest holders in Omni maintain senior full time positions within Omni.

<u>The Debtor's Position</u>

The Debtor asserts that all documents which exist have been produced. In his November 9, 2016 response letter, the Debtor asserted, "There are no internal documents." In a subsequent letter sent to the Trustee on January 25, 2017, the Debtor again provided, "There were no

7

internal or external memos."

**Issue No. 5**

*All Abbott Real Estate Development LLC ("Abbott") and all Abbott affiliated entity bank account statements and check images from January 1, 2012 through the closing of the accounts.*

<u>The Trustee's Position</u>

The Trustee maintains that he is entitled to the production of Abbott and all Abbott affiliated bank account statements and check images in order to fully assess the Debtor's financial condition prior to bankruptcy and properly administer the Debtor's bankruptcy estate. Only now, on March 6, 2017, after repeated requests and conversations, has the Debtor produced bank account statements and check images for an account held in the name of Abbott Real Estate Development, LLC from January 1, 2012 through October 31, 2013.  However, the Debtor previously produced an "Account QuickReport" for Omni which details at least 22 transfers from an Omni bank account to or for the benefit of Abbott or Abbott related entities from May 5, 2014 through March 4, 2016.  The transfers from 2014 through 2016 total approximately $174,000.00 and no Abbott statements for this time period have been provided.  There are five transfers in particular from July 31, 2014 through October 31, 2014 in which the Debtor indicated that the transfers "went to BofA Abbott acct[,]" "went to Abbott checking acct[,]" or "went to Abbott BofA acct."  The Debtor has not identified or produced any statements which would account for the transfers from Omni to or for the benefit of Abbott or Abbott related entities as noted on the Omni "Account QuickReport".  The Debtor further claims that all information concerning any account held in the name of Abbott Homes LLC was purged from Bank of America's record keeping system in 2013.   The Trustee is entitled to verification of the date on which the Abbott accounts were closed and documentation evidencing which account(s)

8

were utilized for the deposit of the payments made to or for the benefit of Abbott or Abbott related entities.

### The Debtor's Position

The Debtor asserts that all documents have been provided as requested. On March 6, 2017, the Debtor provided bank account statements and check images to the Trustee for account 3722 held in the name of Abbott Real Estate Development, LLC. The Abbott Real Estate Development LLC account information was obtained by the Debtor from Bank of America on or about February 27, 2017. In his November 9, 2016 response letter, the Debtor asserted, "I do not have any physical records left for Abbott Real Estate Development, including bank statements. Abbott's CFO left the company several years ago, and now resides in CA. There no longer is a checking account for Abbott — it was closed several years ago — and we have no method to get these records from the bank." Again on January 25, 2017 the Debtor stated, "Debtor no longer has statements for the Abbott accounts, and has no remaining accounts with Bank of America for any Abbott accounts. These accounts were closed some time ago."

**Issue No. 6**

*All Aethon Construction bank account statements and check images.*

### The Trustee's Position

Despite initially indicating that Aethon Construction did maintain a checking account, more recently, on February 10, 2016, the Debtor indicated in an email communication forwarded from Counsel for the Debtor to Counsel for the Trustee that there was never a checking account opened in the name of Aethon Construction. The Trustee will accept verification by the Debtor within this Joint Stipulation that Aethon Construction never maintained any bank account.

### The Debtor's Position

9

Debtor hereby verifies that a bank account was never opened in the name of Aethon Construction.

**Issue No. 7**

*All underlying source documents for all "BKOFAMERICA ATM" deposits made in Debtor's personal account from January 1, 2012 through July 7, 2016.*

<u>The Trustee's Position</u>

The Trustee maintains that he is entitled to the production of all source documents for all ATM deposits made in the Debtor's personal bank account in order to fully assess the Debtor's financial condition prior to bankruptcy. See <u>In re Ridley,</u> <u>supra</u>. There were approximately 30 such deposits made within the two year period prior to the Petition Date. Thus far, the Debtor has merely claimed that he does not have any records pertaining to the deposits other than bank statements. The Debtor however, does not indicate making any effort to obtain any source documents from the Bank of America or any other financial professional (e.g. tax preparer) who may maintain such records. It is the Trustee's understanding that certain banks, including Bank of America, are required to retain copies of such source documents for a period of five years. The Debtor's response therefore is inadequate and unresponsive to the Trustee's request.

<u>The Debtor's Position</u>

The Debtor asserts that all documents which exist have been produced. In his November 9, 2016 response letter, the Debtor noted, "I do not have any other records other than the bank statements." In his January 25, 2017 response letter the Debtor further noted, "Debtor does not have any deposit slips."

**Issue No. 8**

*All underlying source documents for all payments made by Omni to the Debtor on*

*account of Abbott or any entity affiliated with Abbott or the Debtor.*

### The Trustee's Position

The Trustee maintains that he is entitled to the production of all source documents for all payments made by Omni to or for the benefit of the Debtor (other than payroll) and Abbott or any affiliate of Abbott in order to fully assess the Debtor's financial condition prior to bankruptcy. See In re Ridley, supra. As previously noted, there are at least 22 transfers from Omni to or on behalf of Abbott or Abbott related entities totaling approximately $174,000.00 between 2014 and 2016 which the Debtor has failed to provide any supporting documentation. The Debtor claims that a verbal arrangement existed governing all reimbursements made by Omni to the Debtor. The Debtor fails to identify with whom the "verbal arrangement" existed let alone provide any supporting documentation for any of the reimbursed expenses (e.g. rent, phone bills). The Debtor furthermore, does not indicate making any effort to obtain any source documents from any entity which may maintain such records. The Debtor's response is therefore inadequate.

### The Debtor's Position

The Debtor asserts that all documents which exist have been produced. In his November 9, 2016 response letter the Debtor contends, "I have enclosed all of the checks issued by Omni since its banking account started. There are no written documents — memos or loans — regarding this arrangement. It was a verbal arrangement that Omni would reimburse McAuliffe for Omni's share of rent, phones, etc."

**Issue No. 9**

*All underlying source documents for all "reimbursements" made to the Debtor and third-parties from any Omni account as identified on the Omni "QuickReport" provided by the*

11

*Debtor.*

### The Trustee's Position

The Trustee maintains that he is entitled to the production of all source documents for all payments made by Omni to the Debtor and third parties in order to fully assess the Debtor's financial condition prior to bankruptcy. See In re Ridley, supra. This amount totals approximately $150,000 and the payments occurred approximately within two years of the Petition Date. The Debtor merely claims that a verbal arrangement existed governing reimbursement to the Debtor, yet the Debtor fails to identify with whom the "verbal arrangement" existed let alone provide any supporting documentation for any of the reimbursed expenses (e.g. rent, phone bills). The Debtor furthermore, does not indicate making any effort to obtain any source documents from any entity which may maintain such records. In addition the Debtor has not produced any documentation (nor claimed a "verbal arrangement) regarding reimbursements made from any Omni account to any third party. There should be invoices, receipts, or other documentation evidencing these "reimbursable" expenses. The Debtor's response to this request is therefore incomplete.

### The Debtor's Position

The Debtor asserts that all documents which exist have been produced. In his November 9, 2016 response letter the Debtor contends, "I have enclosed all of the checks issued by Omni since its banking account started. There are no written documents — memos or loans — regarding this arrangement. It was a verbal arrangement that Omni would reimburse McAuliffe for Omni's share of rent, phones, etc."

Respectfully submitted,

| | |
|---|---|
| JAMES F. MCAULIFFE | JOHN O. DESMOND, CHAPTER 7 TRUSTEE OF THE ESTATE OF JAMES F. MCAULIFFE |
| By his counsel, | By his counsel, |
| */s/ Gary W. Cruickshank* <br> Gary W. Cruickshank, Esq. BBO#107600 <br> 21 Custom House Street, Ste. 920 <br> Boston, MA 02110 <br> 617-330-1960 Telephone <br> 617-330-1970 Facsimile <br> gwc@cruickshank-law.com | */s/ Thomas S. Vangel* <br> Thomas S. Vangel, Esq. BBO#552386 <br> Anthony R. Leone, Esq. BBO #681760 <br> Murtha Cullina LLP <br> 99 High Street <br> Boston, MA 02110 <br> 617-457-4000 Telephone <br> 617-482-3869 Facsimile <br> tvangel@murthalaw.com <br> aleone@murthalaw.com |

Dated: March 7, 2017

13