## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES F. MCAULIFFE, | ) | CHAPTER 7 |
| | ) | CASE NO. 16-11089-MSH |
| Debtor. | ) | |
| | ) | |
| JOHN O. DESMOND, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| JAMES F. MCAULIFFE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY PROCEEDING |
| v. | ) | NO. 16-01164-MSH |
| | ) | |
| ROBIN S. GILBERT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SETTLEMENT AGREEMENT BY AND AMONG THE CHAPTER 7
## TRUSTEE, JAMES F. MCAULIFFE AND ROBIN S. GILBERT

*[The remainder of this page is intentionally blank.]*

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into as of this 2nd day of November, 2017, by and among John O. Desmond as Trustee of the estate of James F. McAuliffe, Chapter 7 Case No. 16-11089 (the "Trustee"), James F. McAuliffe (the "Debtor"), and Robin Gilbert ("Robin").

WHEREAS, on March 28, 2016, the Debtor filed a voluntary petition pursuant to Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code"); and

WHEREAS, on March 29, 2016, the Trustee was appointed Chapter 7 Trustee of the Debtor's estate; and

WHEREAS, Robin is the Debtor's spouse; and

WHEREAS, on September 15, 2016, the Trustee filed an adversary proceeding against Robin, Adv. Proc. No. 16-01164-MSH ("Adversary Proceeding"), in which the Trustee sought authorization to sell Robin's interest in certain real estate known and numbered as 23 Gurney Street, Cambridge, Massachusetts, held as tenants by the entirety with the Debtor, as more fully described by a deed recorded with the Middlesex County South Registry of Deeds (the "Registry") in Book 44610, Page 258 (the "Marital Home"); and

WHEREAS, the Trustee asserted claims in the Adversary Proceeding pursuant to 363(h) of the United States Bankruptcy Code seeking authorization to sell the non-debtor spouse's interest in the Marital Home; and

WHEREAS, on October 28, 2016, Robin filed an Answer and denied the allegations set forth in the Adversary Proceeding and vigorously opposed the Trustee's action to sell the Marital Home; and

8645621v2

WHEREAS, the Debtor's interest in the Marital Home is fully encumbered and the only equity for the estate through a sale by the Trustee would have been through a $90,000.00 "carve out" payment from the holder of the second mortgage ; and

WHEREAS, the Trustee has additionally conducted an investigation into the Debtor and Robin's interest in Omni Navitas Holdings, LLC and Cambridge Omni, LLC; and

WHEREAS, the Debtor serves as the CEO of Omni Navitas Holdings, LLC, a company in the solar energy business; and

WHEREAS, Robin, the non-debtor spouse, and not the Debtor, holds a 70.5% membership interest in Cambridge Omni, LLC; and

WHEREAS, Cambridge Omni, LLC holds a 42.25% membership interest in Omni Navitas Holdings, LLC (the "Membership Interest"); and

WHEREAS, the Trustee maintains that there is a basis to assert a claim that Robin is holding the Membership Interest for the benefit of the Debtor in either a constructive or resulting trust; and

WHEREAS, the Debtor and Robin deny the existence of any such constructive or resulting trust and maintain that Robin is the proper owner of the Membership Interest;

WHEREAS, by virtue of the foregoing, a controversy exists between the Trustee, the Debtor, and Robin; and

WHEREAS, the Trustee, the Debtor, and Robin, in recognition of the uncertainties, costs, and delays associated with a judicial resolution, now seek to resolve the issues between them, and rather than proceed with further discovery, the filing of pre-trial motions, a trial on the merits of the Adversary Proceeding and a further adversary proceeding with respect to the Trustee's claim to recover the Membership Interest.

2

NOW, THEREFORE, in consideration of the mutual promises and covenants exchanged herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee, the Debtor, and Robin do hereby stipulate and agree as follows:

1.  This Settlement Agreement will be effective only upon the entry of an order of the United States Bankruptcy Court for the District of Massachusetts approving this Settlement Agreement (the "Approval Order") and such Approval Order becoming final (the "Final Order").

2.  The Debtor shall pay the sum of two hundred seventy-five thousand dollars ($275,000.00) ("Settlement Payment") to the Trustee, in full settlement of all claims of the Trustee against the Debtor, Robin, Omni Navitas Holdings, LLC, and Cambridge Omni, LLC as follows:

   a.  $25,000.00 by November 15, 2017;

   b.  $75,000.00 by December 31, 2017;

   c.  $100,000.00 by March 31, 2018; and

   d.  $75,000.00 by June 30, 2018.

A ten-day grace period with respect to the due dates set forth above shall be permitted. In the event that payment is not made at the expiration of the ten-day grace period, the Trustee may exercise any rights and remedies under this Settlement Agreement without prior notice to the Debtor or Robin.

3.  Simultaneously with the execution of this Settlement Agreement, the Debtor and Robin shall deliver an original signed and notarized promissory note, pledge agreement,

3

and mortgage to Attorney Gary Cruickshank in the form attached hereto as Exhibit A (the

"Note"), Exhibit B (the "Pledge Agreement"), and Exhibit C (the "Mortgage").

4.    The Note shall be in the principal amount of $400,000.00, signed by the Debtor and

Robin, and shall be non-recourse to Robin.  The $400,000 Note shall serve as security for

timely payment of $275,000 to the Trustee according to the terms as set forth above.

5.    The Pledge Agreement shall evidence a pledge of Robin's membership interest in

Cambridge Omni, LLC to the Trustee as security for payment of the Note.

6.    The Mortgage shall be a junior mortgage on the Marital Home and shall serve as

security for payment of the Note.

7.    Attorney Gary Cruickshank shall hold the Note, the Pledge Agreement, and the

Mortgage in escrow pending the Bankruptcy Court's entry of the Approval Order.

8.    On the next business day following the entry of the Approval Order, Attorney Gary

Cruickshank shall deliver the Note, the Pledge Agreement, and the Mortgage, to the

Trustee and the Trustee shall be free to record the Mortgage at the Registry.

9.    Upon the Approval Order becoming a Final Order and Trustee's timely receipt of the

full Settlement Payment according to the terms as set forth above, the Trustee shall (i)

endorse the original Note as "paid in full" and return the Note to Attorney Gary

Cruickshank; (ii) return the Pledge Agreement to Attorney Gary Cruickshank; (iii) record

a discharge of the Mortgage with the Registry; and (iv) file a stipulation of dismissal,

with prejudice, dismissing all claims asserted against Robin in the Adversary Proceeding.

10. Effective upon the Approval Order becoming a Final Order, the Debtor and Robin,

hereby remise, release and forever discharge and covenant not to sue the Trustee and the

bankruptcy estate of the Debtor, together with the Trustee's attorneys and agents, from

4

any and all claims from the beginning of the world to the date hereof (including without limitation any and all claims or causes of action for contribution, indemnity, debts, obligations, demands, losses, liabilities, suits, judgments, damages, rights, remedies and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, whenever arising, in law, equity or otherwise), provided that this release does not affect any right to enforce the terms of this Settlement Agreement.

11. Effective upon the Approval Order becoming a Final Order and the Trustee receiving the entire Settlement Payment in a timely fashion in accordance with the terms set forth above, the Trustee, hereby remises, releases, forever discharges and covenants not to sue the Debtor and Robin, together with their attorney of record, from any and all claims from the beginning of the world to the date hereof (including without limitation any and all claims or causes of action for contribution, indemnity, debts, obligations, demands, losses, liabilities, suits, judgments, damages, rights, remedies and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, whenever arising, in law, equity or otherwise, provided that this release does not affect any right to enforce the terms of this Settlement Agreement.

12. Time is of the essence with respect to each and every term of this Settlement Agreement.

13. This Settlement Agreement constitutes the entire agreement of the Trustee, the Debtor, and Robin, and it supersedes any and all prior oral and written agreements, discussions, negotiations, and proposals.

5

14. This Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one document.

15. This Settlement Agreement cannot be changed, modified, or amended except by a written instrument signed by all of the parties.

16. This Settlement Agreement and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, excluding its conflict of laws rules. The United States Bankruptcy Court for the District of Massachusetts shall retain jurisdiction over any matters pertaining to the enforcement of the Settlement Agreement.

17. Each of the parties hereto shall execute and deliver such other and further documents and instruments as may be reasonably requested or required in order to implement fully the terms and provisions of this Settlement Agreement.

18. The parties hereby acknowledge that they have read this Settlement Agreement, that they understand all of the terms of this Settlement Agreement, and that they execute this Settlement Agreement voluntarily in full knowledge of its significance. The parties further acknowledge that they have each been represented by counsel in connection with the negotiation and execution of this Settlement Agreement.

*[Signature Page to Follow]*

This Settlement Agreement is and shall be deemed to be an instrument made under seal under the

laws of the Commonwealth of Massachusetts, and shall be enforceable and binding upon each of

the parties and their respective heirs, successors, and assigns.

JOHN O. DESMOND as Chapter 7 Trustee
of the estate of James F. McAuliffe, Chapter
7 Case No. No. 16-11089

_____

Dated:  November __, 2017

JAMES F. MCAULIFFE

_____

Dated:  November __, 2017

ROBIN GILBERT

_____

Dated:  November __, 2017

7

This Settlement Agreement is and shall be deemed to be an instrument made under seal under the laws of the Commonwealth of Massachusetts, and shall be enforceable and binding upon each of the parties and their respective heirs, successors, and assigns.

JOHN O. DESMOND as Chapter 7 Trustee
of the estate of James F. McAuliffe, Chapter
7 Case No. No. 16-11089

Dated:  November 3, 2017

JAMES F. MCAULIFFE

_____

Dated:  November ___, 2017

ROBIN GILBERT

_____

Dated:  November ___, 2017

7

This Settlement Agreement is and shall be deemed to be an instrument made under seal under the

laws of the Commonwealth of Massachusetts, and shall be enforceable and binding upon each of

the parties and their respective heirs, successors, and assigns.

JOHN O. DESMOND as Chapter 7 Trustee
of the estate of James F. McAuliffe, Chapter
7 Case No. No. 16-11089

_____

Dated:  November __, 2017

JAMES F. MCAULIFFE

_____

Dated:  November 13, 2017

ROBIN GILBERT

_____

Dated:  November 13, 2017

7

# EXHIBIT A

## PROMISSORY NOTE

$400,000.00                                                      November___, 2017
Cambridge, Massachusetts

FOR VALUED RECEIVED, James F. McAuliffe ("**James**") and Robin S. Gilbert ("**Robin**") (James and Robin collectively hereafter referred to as the "**Maker**"), promise to pay to the order of John O. Desmond, the duly appointed Chapter 7 Trustee of the Bankruptcy of James F. McAuliffe, Case No. 16-11089-MSH (the "**Holder**"), with a mailing address of c/o Murtha Cullina, LLP 99 High Street, 20th Floor, Boston, MA 02110, or at such other place as the Holder may from time-to-time designate to the Maker in writing, the principal sum of **Four Hundred Thousand Dollars ($400,000.00)** (the "**Full Amount**"), payable on the terms and at the timing hereinafter specified in the Promissory Note (this "Note") subject to the discount to the principal obligation as described below in paragraph c.

a.   This Note is being executed and delivered together with a junior mortgage (the "Mortgage") of even date herewith granted by the Maker to the Holder, on the real property located at 23 Gurney Street, Cambridge, Massachusetts (the "Property"). The payment and performance of the obligations contained in this Note are secured by the Mortgage.

b.   This Note is also being executed and delivered together with a Pledge (the "Pledge") of an even date herewith granted by Robin to the Holder, concerning her membership interest in Cambridge Omni, LLC. The payment and performance of the obligations contained in this Note are also secured by the Pledge.

c.   This Note will be discharged and marked "paid in full" in the event that Two Hundred Seventy Five Thousand Dollars ($275,000.00) (the "**Satisfaction Amount**") is timely paid according to the following schedule:

| DUE BY | AMOUNT |
|---|---|
| November 15, 2017 | $25,000.00 |
| December 31, 2017 | $75,000.00 |
| March 31, 2018 | $100,000.00 |
| June 30, 2018 | $75,000.00 |
| **TOTAL** | $275,000.00 |

d.   The Satisfaction Amount may be prepaid, in whole or from time-to-time in part, if before July 1, 2018, without premium or penalty.

e.   It is expressly agreed that any failure to pay any amount or installment of principal when due as set forth above shall constitute an "**Event of Default**" hereunder. If such Event of Default hereunder shall occur, the Holder will be entitled to enforce this Note for the Full Amount, whereupon all such amounts shall become and be due and payable to Holder

immediately. The failure of the Holder to exercise said option to accelerate shall not constitute a waiver of the right to exercise the same at any other time.

f.   No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy, except as approved or consented to in writing by the Holder. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the party to be bound thereby.  Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion.

g.   The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note, except as provided in writing by the Holder.

h.   Upon the occurrence of an Event of Default, the Maker agrees to pay all costs and fees of collection, including reasonable attorneys' fees and disbursements, including but not limited to all fees and expenses incurred in connection with the foreclosure of the Mortgage and any act under the Pledge necessary to collect on the Pledge.

I   The Maker hereby waives presentment for payment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note, and the Maker's liability hereunder shall remain unimpaired, notwithstanding any extension of the time of payment or other indulgence granted by the Holder, or the release of all or part of such security or the liability of any party which may assume the obligation to make payment of the indebtedness evidenced hereby or to perform the obligations of the Maker under this Note, or any other instrument evidencing or securing the payment thereof or affecting the Property.

j.   All notices, requests, consents, claims, demands, waivers and other communications (together, "Notices") hereunder shall be in writing and shall be deemed to have been given (a) when delivered in person (with written confirmation of receipt); (b) when received by the addressee if sent by nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a "portable document format" ("pdf") document (with confirmation of transmission; or (d) on the third day after the date mailed, by US Postal Service certified mail, return receipt requested, postage prepaid. Such notices shall be sent to the respective Parties at the addresses indicated below:

| | |
|---|---|
| If to the Maker: | James F. McAuliffe and Robin Gilbert<br>23 Gurney Street<br>Cambridge, MA 02138 |
| With a copy to: | Gary Cruickshank<br>21 Custom House, Ste. 920<br>Boston, MA  02110<br>gwc@cruickshank-law.com |
| If to the Holder: | John O. Desmond, Chapter 7 Trustee<br>5 Edgell Road, Ste. 30A<br>Framingham, MA 01701 |

2

attorney@jdesmond.com

With a copy to:        Murtha Cullina LLP
                       99 High Street
                       Boston, MA 02110
                       Attn: Thomas S. Vangel
                       tvangel@murthalaw.com

    k.  The Maker acknowledges that it has had the opportunity to consult with legal advisors of its selection in connection with the obligations evidenced hereby and related documents.

    l.  Other than with respect to the Pledge, this Note shall be non-recourse to Robin and shall be full recourse to James.

    This Note has been delivered to and accepted by the Holder and will be deemed to be made in the Commonwealth of Massachusetts.  This Note will be interpreted in accordance with the laws of the Commonwealth of Massachusetts.

MAKER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE MORTGAGE WHETHER BASED ON CONTRACT, EQUITY, TORT OR ANY OTHER THEORY.

    All of the provisions of this Note shall be binding upon and inure to the benefit of the Maker and the Holder and their respective successors and assigns.

[the remainder of this page is intentionally left blank]

3

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.

WITNESS:                                    MAKER


By: _____        _____
                                                James F. McAuliffe


By: _____        _____
                                                Robin S. Gilbert

# EXHIBIT B

## PLEDGE OF MEMBERSHIP INTERESTS

This PLEDGE OF MEMBERSHIP INTEREST (**"Pledge"**) is dated as of this __ day of November, 2017, and is made by Robin S. Gilbert, an individual, with a mailing address of 23 Gurney Street, Cambridge, Massachusetts 02138 (the **"Pledgor"**) for the benefit of John O. Desmond, the duly appointed Chapter 7 Trustee of the Bankruptcy of James F. McAuliffe, Case No. 16-11089-MSH (**"Holder"**) and is executed under the following terms and conditions.

## RECITALS

A.    The Pledgor is the non-debtor spouse of James F. McAuliffe (the **"Debtor"**).

B.    The Pledgor owns 70.5% of the membership interests in Cambridge Omni, LLC, a Massachusetts limited liability company.

C.    The Pledgor has certain non-recourse obligations which are evidenced by a Promissory Note in the amount of Four Hundred Thousand Dollars ($400,000.00) of even date herewith (the **"Note"**). Other than with respect to this Pledge, the Note is non-recourse to the Pledgor and is full recourse to the Debtor.

D.    As security for the full, complete and timely payment, performance and discharge of the Note by Pledgor, Pledgor has agreed to pledge to Holder all of her right in and to her membership interests and economic interests including, but not limited to, all rights to distributions and profits in Cambridge Omni, LLC.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Pledge, the receipt and sufficiency of which is hereby acknowledged, and for other good and valuable consideration, including the Holder's settlement of certain claims against Pledgor, Pledgor hereby agrees as follows:

1.    **Pledge of Membership Interest and Distribution Proceeds .** To secure the full, complete and timely payment, performance and discharge of the Note, Pledgor hereby assigns, transfers and grants to Holder a security interest in Pledgor' s right, title and interest, legal and equitable, in and to her entire membership interests in Cambridge Omni, LLC hereinafter referred to as **"Membership Rights"**. Specifically, Pledgor hereby assigns, transfers and grants to Holder, all of Pledgor' s right, title and interest in and to all Membership Rights of Pledgor in Cambridge Omni, LLC. **Pledgor' Representations.** Pledgor hereby represents and warrants to Holder as follows:

a.    Pledgor has good and marketable title to the Membership Rights, free of all security interests, liens, claims, charges and encumbrances of any nature whatsoever.

b.    The execution, delivery and performance by Pledgor of this Pledge will not violate, conflict with, result in a breach of, or constitute a default under, any agreement or instrument to which Pledgor is a party or by which Pledgor is bound, nor result in the creation or imposition of any lien, charge or encumbrance upon the Membership Rights, except as provided herein, nor violate any judgment, decree, order or award of any court, governmental body or arbitrator, or any applicable law, rule or regulation.

c.     Pledgor shall promptly procure, execute and deliver to Holder all documents, instruments and agreements and perform all acts that Holder may reasonably request, to (i) establish, maintain, preserve, protect and perfect the pledge of the Membership Rights and the first priority of such pledge; and (ii) enable Holder to exercise and enforce its rights and remedies under the Note, junior mortgage on real property known and numbered as 23 Gurney Street, Cambridge MA (the "Mortgage") or this Pledge.   Without limiting the generality of the preceding sentence, Pledgor shall procure, execute and deliver to Holder all endorsements, assignments, financing statements and other instruments of transfer or perfection requested by Holder.

d.     Pledgor shall pay promptly when due all taxes and other governmental charges, all liens and all other charges now or hereafter imposed upon, and shall make all capital contributions relating to or affecting, the Membership Rights.

e.     Pledgor shall appear in and defend any action or proceeding that may affect title to, or Holder's interest in, the Membership Rights.

f.     Pledgor shall not surrender or lose possession of (other than to Holder), sell, encumber, option, or otherwise dispose of or transfer any Membership Rights or right or interest in the Membership Rights.   Pledgor shall keep the Membership Rights free of all liens other than those created by this Pledge.   Pledgor shall at all times be the legal and beneficial owner of record of the Membership Rights.

3.     **Pledgor' s Covenants.**  Pledgor hereby covenants and agrees that:

a.     During the period of the pledge of the Membership Rights pursuant to this Pledge (**"Pledge Period"**), Pledgor shall not make or suffer to be made any pledge, hypothecation, lien, charge, option or encumbrance of any kind on or affecting the Membership Rights, except the lien and security interest created by this Pledge.

b.     During the Pledge Period, Pledgor will not sell or assign any of the Membership Rights and will keep it free of liens, security interests and adverse claims; will promptly notify Holder of any event of default; will defend the Membership Rights against the claims and demands of all persons, and will pay promptly all taxes, assessments and capital contributions with respect to the Membership Rights.

c.     During the Pledge Period, at its option, Holder may discharge taxes, liens, security interests and other claims against the Membership Rights and may pay for the maintenance, preservation and protection thereof, including costs and expenses incidental to any actions undertaken by Holder.   Pledgor will reimburse Holder on demand for any payments so made.   Any such payments by Holder shall become part of the Note.

d.     During the Pledge Period, Pledgor shall not prevent Cambridge Omni, LLC to carry on its business in accordance with past practices and shall take no specific action which would dilute the value of the Membership Rights.

4.     **Rights of Holder.**  Pledgor hereby acknowledges and agrees that:

a.     Holder shall be deemed to have exercised reasonable care in the custody and preservation of the Membership Rights.   Holder shall not be required to take any steps

2

necessary to preserve any rights in the Membership Rights against prior parties nor to protect, preserve or maintain any security interest given to secure the Membership Rights.

b.    Upon an Event of Default (as defined in the  Note ) and in its discretion and without notice, Holder may take any one or more of the following actions (and Holder is hereby irrevocably appointed Pledgor' s attorney-in-fact to accomplish this), without liability except to account for property actually received by them:  (i) transfer the Membership Rights to a third-party transferee; (ii) in its name or in the name of the Pledgor, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for any of the Membership Rights and in connection therewith; (iii) make any compromise or settlement deemed advisable with respect to any of the Membership Rights; or (iv) renew, extend or otherwise change the terms and conditions of the Note.

c.    Holder shall be under no duty to exercise or to withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to Holder in this Pledge, and shall not be responsible for any failure to do so or delay in so doing.

5.    **Authorized Action by Holder.**  If there is any Event of Default under this Pledge, Holder may perform any act that Pledgor is obligated to perform under this Pledge, and to exercise such rights and powers as Pledgor might exercise with respect to the Membership Rights, provided, however Holder shall not be required to act or perform any such duties. Pledgor hereby grants an irrevocable power of attorney to Holder to perform such acts.  Holder shall not be obligated to and shall incur no liability to Pledgor or any third party for any failure to perform any such act.   Such acts shall include, without limitation, to (a) collect by legal proceedings or otherwise and endorse and receive all dividends, interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Membership Rights; (b) enter into any extension, reorganization, deposit, merger, consolidation or other agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for the Membership Rights; (c) insure, process, preserve and enforce the Membership Rights; (d) make any compromise or settlement, and take any action it deems advisable, with respect to the Membership Rights; (e) pay any indebtedness or make any capital contributions of Pledgor relating to the Membership Rights; and (f) execute UCC financing statements and other documents, instruments and agreements required by this Pledge.  In addition, Holder may cause all or any part the Membership Rights to be transferred to or registered in their name or the name of their nominee or nominees, but only if either (x) an Event of Default has occurred or (y) in Holder's reasonable judgment, failure to take that action would materially impair their rights under this Pledge.  Pledgor agrees to reimburse Holder upon demand for all reasonable costs and expenses, including attorneys' fees, Holder may incur while acting as Pledgor' s attorney-in-fact hereunder, all of which costs and expenses are included in the Note.  Holder shall have no duty with reference to the Membership Rights except to use reasonable care in its custody and preservation, which shall not include any steps necessary to preserve rights against other persons nor the duty to send notices, perform services, or take any action in connection with the management of the Membership Rights.  Pledgor hereby releases Holder from any claims or causes of action at any time arising out of or with respect to the Membership Rights or in connection with any actions taken or omitted to be taken by Holder relating to the Membership Rights.  Pledgor agrees to indemnify Holder and hold Holder harmless from any such claims and causes of action, except for claims and causes of action arising out of the failure by Holder to use reasonable care in the custody and preservation of the Membership Rights.  Pledgor agrees that such care as Holder gives to the safekeeping of its own property of like kind shall constitute reasonable care of the Membership Rights, when in Holder's possession.  Holder shall not be required to make any presentment, demand or protest, or give

3

any notice and need not take any action to preserve any rights against any other person in connection with the Note or with respect to the Membership Rights.

6.   **Other Rights and Remedies**.  In addition to all other rights and remedies granted to Holder by this Pledge, Holder may, upon the occurrence and during the continuance of any Event of Default, exercise any one or more of the following rights and remedies: (i) collect, receive, appropriate or realize upon the Membership Rights or otherwise foreclose or enforce Holder's security interests in any or all Membership Rights in any manner permitted by applicable law and this Pledge; (ii) notify any or all issuers of or transfer or paying agents for the Membership Rights or any applicable clearing corporation, financial intermediary or other Person; (iii) sell or otherwise dispose of any or all Membership Rights at one or more public or private sales on such terms and in such manner as Holder may determine; and (iv) require Pledgor to assemble all records and information relating to the Membership Rights and make it available to Holder at a place to be designated by Holder.  In any case where notice of any sale or disposition of any Membership Rights is required, Pledgor agrees that seven (7) days' notice of such sale or disposition is reasonable.

7.   **Voting Rights.**  Pledgor shall retain all rights to vote its Membership Rights during the Pledge Period, so long as Pledgor is not in default or breach under the Note or this Pledge and no Event of Default has occurred under the Note documents which have been entered into as a part of the Note transactions (the **"Note Documents"**).

8.   **Events of Default**.  The occurrence of an event of default under the Note or Mortgage Documents as set forth and defined therein shall constitute an Event of Default under this Pledge.

9.   **Rights and Liabilities of Holder.**  The acceptance by Holder of the Membership Rights under this Pledge is subject to the following terms and conditions, which the parties to this Pledge hereby agree shall govern and control with respect to the rights, duties, liabilities and immunities of Holder.

a.   Holder is not party to, and is not bound by, any agreement that may be evidenced by, or arise out of, the foregoing instructions, other than as expressly herein set forth.

b.   Holder shall be protected in acting upon any written notice, request, waiver, consent, receipt or other paper or document that Holder in good faith believes to be genuine and what it purports to be.

c.   Holder shall not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for any thing that it may do or refrain from doing in connection herewith, except its own negligence or misconduct.

d.   Pledgor shall be responsible for reimbursing all attorneys' fees and costs actually and reasonably incurred by Holder in connection with any claim made against Holder resulting from any action taken by Holder for which Holder is relieved from liability pursuant to this Agreement.

e.   Holder shall not be liable for any acts or omissions of Pledgor with respect to fulfilling any obligations of Pledgor under the Operating Agreement.

4

8518165v1

10.    **No Waiver.**  No delay or omission on the part of Holder in exercising any power, right, or remedy hereunder shall operate as a waiver of any power, right, remedy nor shall any single or partial exercise of any power, right or remedy preclude any other or further exercise thereof or the exercise of any other power, right or remedy of Holder under this instrument or that may be provided by law, it being understood that any extension or indulgence at any time allowed by Holder or Pledgor shall not affect or prejudice the rights, powers and remedies of Holder except to the extent specifically set forth in writing by Holder.   Notwithstanding the foregoing, no waiver of any right, remedy, power or privilege with respect to any occurrence shall be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

11.    **Termination.**  This Pledge and the lien and security interest granted hereby shall terminate upon the satisfaction of the Note.

12.    **Notices.**  Any notice required or permitted to be given by any party shall be in writing in writing and will be deemed given (a) upon personal delivery, (b) upon confirmed transmission by telecopy or similar facsimile transmission device, (c) on the first business day after receipted delivery to a courier service which guarantees next business-day delivery, or (d) on the third business day after placing in the United States mail, in any case, to the appropriate party at its address set forth below:

| | |
|---|---|
| If to Pledgor: | Robin S. Gilbert |
| | 23 Gurney Street, |
| | Cambridge, Massachusetts 02138 |
| | |
| With a copy to: | Gary Cruickshank |
| | 21 Custom House, Suite 920 |
| | Boston, MA 02110 |
| | gwc@cruickshank-law.com |
| | |
| If to Holder: | John O. Desmond c/o |
| | Thomas S. Vangel, Esq. |
| | Murtha Cullina LLP |
| | 99 High Street |
| | Boston, Massachusetts 02110 |
| | Telephone:  617-457-4072 |
| | Facsimile:  617-210-7072 |
| | tvangel@murthalaw.com |

13.    **Binding Effect.**  This Pledge shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors and assigns.

14.    **Governing Law.**   This Pledge shall be governed by and construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, notwithstanding any other conflict-of-law provisions to the contrary.

15.    **Governing Agreement.**   This Pledge contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the

8518165v1

subject matter hereof.   The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof.  This Pledge may not be modified or amended other than by an agreement in writing.

     16.    **Construction.**  The parties hereto acknowledge and agree that each party has participated in the drafting of this Pledge and that this document has been reviewed by the respective legal counsel for the parties hereto and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied to the interpretation of this Pledge.  No inference in favor of, or against, any party shall be drawn from the fact that one party has drafted any portion hereof.

     17.    **Provisions Severable.**  The provisions of this Pledge are independent of and severable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.   Further, if a court of competent jurisdiction determines that any provision of this Pledge is invalid or unenforceable as written, the court may interpret, construe, rewrite or revise such provision, to the fullest extent allowed by law, so as to make it valid and enforceable consistent with the intent of the parties.

     18.    **Counterparts.**  This document may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute but one and the same instrument.   Facsimile and e-mailed (PDF) signatures shall be afforded the full force and effect of any original signature.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

SIGNATURE PAGE FOLLOWS

8518165v1

**IN WITNESS WHEREOF**, the undersigned has caused this Pledge to be executed and delivered as of the day and year first above written.

SIGNED SEALED AND DELIVERED                    PLEDGOR:
IN THE PRESENCE OF:


_____        _____
                                        Robin S. Gilbert


COMMONWEALTH OF MASSACHUSETTS

_____, ss

On this _____ day of November, 2017, before me, the undersigned notary public, personally appeared Robin S. Gilbert, proved to me through satisfactory evidence of identification, which was _____, to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.


                    _____
                    Notary Public
                    My commission expires:

7

# EXHIBIT C

## MORTGAGE AND SECURITY AGREEMENT

**James F. McAuliffe and Robin S. Gilbert,** as husband and wife, tenants by the entirety (together, the "Mortgagor"), with an address of 23 Gurney Street, Cambridge, Massachusetts 02138, for consideration paid, hereby grants to **John O. Desmond, the duly appointed Chapter 7 Trustee of the Bankruptcy of James F. McAuliffe, Case No. 16-11089-MSH,** with a mailing address of c/o Murtha Cullina LLP, 99 High Street, 20th Floor, Boston, Massachusetts ("Mortgagee"), all their right, title and interest in, to and under, the land, buildings and improvements located at 23 Gurney Street Cambridge, Massachusetts, more particularly described in <u>Exhibit A</u> attached hereto and incorporated herein (the "Mortgaged Premises") with MORTGAGE COVENANTS, to secure payment and performance of Mortgagor of a promissory note in the principal amount of Four Hundred Thousand and 00/100 Dollars ($400,000.00) of even date (the "Note") payable to the order of the Mortgagee and to secure the payment and performance of the other covenants of Mortgagor to the Mortgagee under this Mortgage and Security Agreement and pursuant to a certain Settlement Agreement between Mortgagor and Mortgage dated as of _____, 2017, with the foregoing obligations collectively referred to as the "Obligations".

A.    <u>Mortgaged Premises</u>.

The term "Mortgaged Premises" shall mean and include all of the following described property:

The land together with the improvements and other structures now or hereafter situated thereon (the "Improvements") and located on or adjoining 23 Gurney Street Cambridge, Massachusetts, which land (the "Land") is more particularly described on Exhibit "A" which is annexed hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, appurtenances, easements, including, but not limited to, rights and easements for access and egress and utility connections, and other rights now or hereafter appurtenant thereto ("Real Estate");

All real estate fixtures or items which by agreement of the parties may be deemed to be such fixtures, now or hereafter owned by Mortgagor, or in which Mortgagor has an interest, and now or hereafter located in or upon the Real Estate, or now or hereafter attached to, installed in, or used in connection with any of the Real Estate ("Fixtures");

All bridges, easements, rights of way, licenses, privileges, hereditaments, permits and appurtenances hereafter belonging to or enuring to the benefit of the Real Estate and all right, title and interest of Mortgagor in and to the land lying within any street or roadway adjoining the Real Estate and all right, title and interest of the Mortgagor in and to any vacated or hereafter vacated streets or roads adjoining the Real Estate and any and all reversionary or remainder rights ("Additional Appurtenances");

All of the right, title and interest of Mortgagor in and to any award or awards heretofore made or hereafter to be made by any municipal, county, state or federal authorities to the present or any subsequent owners of the Land or Real Estate, or the Improvements, or the Fixtures, or the Additional Appurtenances, including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (a) condemnation proceedings or the taking of the Land, or the Improvements, or

the Fixtures, or the Additional Appurtenances, or any part thereof, under the power of eminent domain, or (b) the alteration of grade or the location or discontinuance of any street adjoining the Land or any portion thereof, or (c) any other injury to or decrease in value of the Mortgaged Premises, and the Mortgagor hereby agrees to execute and deliver from time to time such further instruments as may be requested by the Mortgagee to confirm such assignment to the Mortgagee of any such award, damage, payment or other compensation ("Awards");

All leases now or hereafter entered into of the Real Estate, or any portion thereof, and all rents, issues, profits, revenues, earnings and royalties therefrom, and all right, title and interest of Mortgagor thereunder, including, without limitation, cash, letters of credit, or securities deposited thereunder to secure performance by the tenants or occupants of their obligations thereunder, whether such cash, letters of credit, or securities are to be held until the expiration of the terms of such leases or occupancy agreements or applied to one or more of the installments of rent coming due prior to the expiration of such terms including, without limitation, the right to receive and collect the rents thereunder ("Leases").

B.      Covenants.

Mortgagor covenants and agrees with Mortgagee, its successors and assigns, that:

Protection and Maintenance.  Mortgagor will protect and maintain or cause to be protected and maintained in the same repair and condition as at present at all times (damage by casualty expressly not excepted), the buildings and other structures now standing or hereafter erected on the Mortgaged Premises, and any additions and improvements thereto, and the utility services, parking areas and access roads, and all building fixtures, and equipment now or hereafter acquired and used in connection with the operation of the Real Estate, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use with other property of similar character and quality.

No Waste; Compliance With Law.  Mortgagor will not commit or suffer any demolition, removal or material alteration of any of the Mortgaged Premises without Mortgagee's prior written consent, or commit or suffer any strip or waste, or demolition, removal or material alteration, of the Mortgaged Premises or any violation of law, rule, regulation, ordinance, license or permit, or the requirements of any licensing or insuring authority, and will keep in full force and effect all licenses, permits and other governmental approvals necessary for the operation of the Mortgaged Premises or any business conducted thereon.

Insurance Coverage.  Mortgagor will keep the buildings, Improvements, and Fixtures on the Mortgaged Premises insured with so-called "all risk" or "special form" casualty insurance policies, and such other forms of coverage as Mortgagee shall require, in an amount which, in Mortgagee's judgment, shall be 100% of the full insurable value of said buildings, Improvements and Fixtures and not less than an amount sufficient to prevent Mortgagor from becoming a co-insurer within the terms of such policies. Mortgagor shall also provide, maintain and keep in full force and effect public liability insurance with limits acceptable to Mortgagee.  Mortgagor shall also provide, maintain,

and keep in force, if the buildings and improvements (or any part thereof) are located in a flood prone, flood risk or flood hazard area as designated pursuant to the Federal Flood Disaster Protection Act of 1973, as amended, and regulations thereunder, a policy of flood insurance issued under and in compliance with that Act and those regulations in an amount determined from time to time by Mortgagee and which will comply with the requirements of that Act and those regulations.

All insurance policies shall be subject to Mortgagee's review and approval, shall be written by insurers authorized to conduct business in the state in which the Mortgaged Premises are located and otherwise acceptable to Mortgagee, and shall be first payable in case of loss to Mortgagee and all insurance policies shall designate Mortgagee as an additional insured and shall contain a Lender's Loss Payee endorsement. The original of all such policies of insurance (or certificates thereof issued by the insurer in form, content and manner of execution satisfactory to Mortgagee) shall be delivered to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy (or such a certificate) as replacement for an expiring policy (or such a certificate) required to be deposited hereunder at least thirty (30) days before the date of such expiration. Mortgagor hereby irrevocably appoints Mortgagee its true and lawful attorney-in-fact, with full power of substitution, in the event of default, to deal with the insurer with respect to all matters arising under the policy and in the event of foreclosure of this Mortgage to assign any policy.

Mortgagee's Rights to Deal With Mortgagor's Successors. Mortgagee, without notice to any person, may deal with any successor in interest of Mortgagor herein regarding this Mortgage and the debt and other Obligations hereby secured in all respects as it might deal with Mortgagor herein, without in any way affecting the liability hereunder, or the debt or other Obligations secured hereby, of any predecessor in interest of the person so dealt with. No sale of all or any part of the Mortgaged Premises, nor any forbearance on the part of Mortgagee, nor any extension by Mortgagee of the time for payment and performance of the debt and other Obligations hereby secured, shall operate to release, discharge, modify, change or affect the original liability of any predecessor in interest to the equity owner at the time of such sale, forbearance or extension.

Payment of Taxes. Mortgagor will pay before delinquent or before any penalty for nonpayment attaches thereto, all taxes, assessments and charges of every nature and to whomever assessed that may now or hereafter be levied or assessed upon the Mortgaged Premises or any part thereof, or upon the rents, issues, income or profits thereof or upon the lien or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes.

Certain Expenses. If any action or proceeding be commenced, including an action to foreclose this Mortgage or to collect the debt hereby secured, to which action or proceeding Mortgagee is made a party by reason of the execution of this Mortgage or by reason of any Obligation which it secures, or by reason of entry or any other action under this Mortgage, or if it becomes necessary in connection with legal proceedings or otherwise to defend or uphold the mortgage hereby granted or the lien hereby created or any act taken under this Mortgage, all reasonable sums paid or incurred by Mortgagee for the expense of any litigation or otherwise, in connection with any rights created by this

3

Mortgage, shall be paid by Mortgagor, or may at the discretion of Mortgagee be added to the Obligations and shall be secured hereby equally and ratably.

Power of Sale. This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements of Mortgagor contained herein and in the Note and every other document executed in connection therewith shall be kept and fully performed, for any breach of which Mortgagee shall have the STATUTORY POWER OF SALE.

In exercising its power of sale under this Mortgage, Mortgagee may sell the Mortgaged Premises and other collateral secured hereby as one unit or parcel or in such separate units or parcels as Mortgagee may in its discretion elect; and may so sell the Mortgaged Premises or any part thereof either separately from or together with the whole or any part of other collateral which may constitute security for any Obligation, also as Mortgagee may in its discretion elect. In the event of any separate sales , Mortgagee will give to Mortgagor reasonable notice of the time and place of any public sale or of the time after which any private sale or other intended disposition thereof is to be made, and such requirement of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or other disposition.

Waiver by Mortgagor. Mortgagor, to the fullest extent that Mortgagor may do so, hereby: (a) agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the Obligations; and (b) waives all rights to a marshalling of the assets of Mortgagor, including without limitation the Mortgaged Premises, or to a sale in inverse order of alienation in the event of a sale hereunder of the Mortgaged Premises, and agrees not to assert any right under any statute or rule of law pertaining to the marshalling of assets, sale in inverse order of alienation, or other matters whatever to defeat, reduce or affect the right of the Mortgagee under the terms of this Mortgage or the Notes or any other document executed in connection herewith, to a sale of the Mortgaged Premises for the collection of the indebtedness evidenced by the Note and all other Obligations without any prior or different resort for collection, or the right of Mortgagee to the payment of such indebtedness and other Obligations out of the proceeds of sale of the Mortgaged Premises in preference to every other claimant whatever.

Notices. All notices, demands, and other communications made with respect to this Mortgage or any other document executed in connection therewith shall be in writing and given by hand; by Express Mail or any nationally recognized overnight delivery service; by telecopier (provided a copy is also sent via first class mail); or by certified or registered first class mail, return receipt requested, postage prepaid; and sent to the addresses set forth on the first page hereof. Each of the foregoing addresses may be changed upon fifteen (15) days prior written notice given by any of the foregoing prescribed methods. All notices shall be deemed received on the earliest of (i) actual receipt; (ii) the date on which the notice was delivered by hand, telecopier, or telegram; or (iii) two (2) business days after sending such notice otherwise in accordance with the foregoing provisions.

4

<u>Mortgagee</u> <u>Not</u> <u>Obligated;</u> <u>Cumulative</u> <u>Rights</u>.  Nothing in this Mortgage shall be construed as obligating Mortgagee to take any action or incur any liability with respect to the Mortgaged Premises or any business conducted thereon, and all powers given to Mortgagee are for its benefit and shall be exercised in  Mortgagee's discretion, as indicated herein.  All of Mortgagee's rights hereunder are cumulative and in addition to, and not in substitution for, the rights of Mortgagee under all other documents executed in connection herewith. In the event of a conflict between the rights of Mortgagee hereunder and the rights of Mortgagee under any other document, Mortgagee may elect, at its sole discretion, to exercise any such rights in such order and combinations as it deems appropriate.  Likewise, Mortgagor's obligations hereunder are cumulative and are in addition to and not in substitution for the obligations of Mortgagor under all other documents.  In the event of a conflict between the obligations of Mortgagor hereunder and the obligations of Mortgagor under any other document, Mortgagor shall perform and adhere to those obligations most favorable to Mortgagee and most restrictive upon Mortgagor.

<u>Maximum</u> <u>Amount</u> <u>Secured</u>.  The maximum amount secured by this Mortgage shall include the total of all of the following items which may be outstanding at any time: principal; interest; legal fees; collection and foreclosure costs (including appraisals, environmental testing (and remediation, if necessary), brokerage commissions, commercial advertising costs, and auctioneer fees); all taxes, insurance premiums, maintenance costs or other amounts advanced by Mortgagee for purpose of protecting its security; and all other Obligations of Mortgagor to Mortgagee;  and  all other damages and costs to which the holder of a mortgage is entitled under applicable law.

This Mortgage shall inure to the benefit of and be binding upon Mortgagor and Mortgagee and their respective representatives, successors and assigns.  The terms "Mortgagor" and "Mortgagee" as used herein shall include all subsequent holders of their respective rights, title and interests under this Mortgage.

[This page ends here.  Signature page to follow.]

5

EXECUTED as a sealed instrument under Massachusetts law as of the _____ day of _____, 2017.

MORTGAGOR:

_____
James F. McAuliffe

_____
Robin S. Gilbert

## COMMONWEALTH OF MASSACHUSETTS

County of _____, ss:

On this _____ day of _____, 2017, before me, the undersigned notary public, personally appeared James F. McAuliffe, proved to me through satisfactory evidence of identification, which was _____ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public:
My Commission Expires:

## COMMONWEALTH OF MASSACHUSETTS

County of _____, ss:

On this _____ day of _____, 2017, before me, the undersigned notary public, personally appeared Robin S. Gilbert, proved to me through satisfactory evidence of identification, which was _____ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Notary Public:
My Commission Expires:

## EXHIBIT A

A certain parcel of land with the buildings thereon situated in Cambridge being now numbered as 23 Gurney Street and being shown as Lot C on a plan entitled "Plan of Land in Cambridge owned by B.A. Rice," dated April 14, 1910 by Charles J. Elliot, Engineer and Surveyor, recorded with Middlesex South District Registry of Deeds, at the end of Book 3726, being bounded and described as follows:

SOUTHEASTERLY: by said Gurney Street, forty-three (43) feet;
SOUTHWESTERLY: by Lot B on said plan, eighty-seven and 48/100 (87.48) feet;
NORTHWESTERLY: by land owners unknown, forty-three and 02/100 (42.03) feet;
NORTHEASTERLY: by Lot D on said plan, eighty-nine and 01/100 (89.01) feet.

Said land is subject to, and has the benefit of, the easements, restrictions, covenants and rights so far as the same are in force and applicable.

Containing 3,795 square feet of land, more or less, according to said description or plan.

Being the same premises conveyed to the Mortgagor by deed dated February 4, 2005 and recorded in the Middlesex South Registry of Deeds in Book 44610, Page 258.