**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES F. MCAULIFFE, | ) | CHAPTER 7 |
| | ) | CASE NO. 16-11089-MSH |
| Debtor. | ) | |
| | ) | |
| JOHN O. DESMOND, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| JAMES F. MCAULIFFE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY PROCEEDING |
| v. | ) | NO. 16-01164-MSH |
| | ) | |
| ROBIN S. GILBERT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT**
**AGREEMENT BY AND AMONG THE CHAPTER 7 TRUSTEE,**
**JAMES F. MCAULIFFE AND ROBIN S. GILBERT**

John O. Desmond, the duly appointed Chapter 7 Trustee of the above-captioned

bankruptcy estate (the "Trustee"), hereby moves this Court pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure for the entry of an Order approving the Settlement Agreement

(the "Agreement") by and among the Trustee, James F. McAuliffe (the "Debtor"), and the

Debtor's non-debtor spouse, Robin S. Gilbert ("Robin") (collectively, the "Parties").

In support thereof, the Trustee states:

## I.      BACKGROUND

1.      On March 28, 2016, the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

2.      On March 29, 2016, the Trustee was appointed Chapter 7 Trustee of the Debtor's estate.

### A.  The Adversary Proceeding and the Marital Home

3.      On September 15, 2016, the Trustee filed an adversary proceeding against Robin, Adv. Proc. No. 16-1164-MSH (the "Adversary Proceeding"), in which the Trustee sought authorization pursuant to Section 363(h) of the Bankruptcy Code to sell Robin's interest in certain real estate known and numbered as 23 Gurney Street, Cambridge, Massachusetts as more fully described by a deed recorded with the Middlesex County South Registry of Deeds in Book 44610, Page 258 (the "Marital Home").  In connection with the Adversary Proceeding, the holder of a second mortgage against only the Debtor's interest in the Marital Home, agreed to provide the estate with a $90,000.00 carve out to be paid in the event of the sale of the Marital Home pursuant to 11 U.S.C. § 363(h) (the "Carve Out Payment").

4.      At all times following the purchase of the Marital Home, including as of the Petition Date, the Debtor and Robin have held title to the Marital Home as tenants by the entirety.

5.      According to an appraisal completed by Real Estate Appraisals, Inc. for the Debtor in connection with a "determination of market value for legal proceedings," and dated January 12, 2016, the Gurney Street Property was valued at $2,577,000.00.

8699804v1

6.      According to an appraisal completed by William F. Curley Jr. Associates for the Trustee in connection with the Adversary Proceeding and dated May 12, 2017, the fair market value of the Marital Home is $2,470,000.00.

7.      The Marital Home is subject to an adjustable rate first mortgage held by Emigrant Mortgage Co. (the "Emigrant Mortgage") recorded on February 8, 2005 in the Middlesex Registry of Deeds at Book 44610, Page 290.  The Emigrant Mortgage secures an obligation of $1,299,350 owed by the Debtor and Robin.

8.      The Marital Home is also encumbered by a lien held by the Massachusetts Department of Revenue (the "Massachusetts Tax Lien") recorded in the Middlesex Registry of Deeds on March 7, 2016 at Book 66893, Page 59.  The Massachusetts Tax Lien secures a joint debt of both the Debtor and Robin.  On July 28, 2016, the Massachusetts Department of Revenue filed a proof of claim asserting a secured claim in the amount of $199,004.14, arising from Mass. Gen. Laws. c. 62C § 50, a priority claim in the amount of $8,867.21, and an unsecured claim of $80,665.70, totaling $288,537.05.

9.      The Property is also subject to a second mortgage held by February Investors LLC ("February Investors") executed solely by the Debtor on February 9, 2009 and recorded in the Middlesex Registry of Deeds on February 10, 2009 at Book 52213, Page 467.  According to the Debtor's Schedule C, February Investors' maintains a second mortgage on the Marital Home which secures an outstanding obligation of the Debtor of approximately $1,842,860.90.

10.     The Marital Home is also subject to twelve writs of attachment and/or executions totaling in excess of $24,000,000.00.

8699804v1

11.     Based upon the aforementioned, the Debtor's interest in the Marital Home is fully encumbered and the only equity for the estate through a sale by the Trustee would have been through the Carve Out Payment of $90,000.00.

12.     On October 28, 2016, Robin filed an Answer and denied allegations contained in the Adversary Proceeding and asserted five affirmative defenses.

13.     On May 15, 2017, the Trustee deposed Robin in furtherance of the Adversary Proceeding.

14.     Throughout the Adversary Proceeding, Robin has vigorously opposed the Trustee's action to sell the Marital Home.

**B.  The Trustee's Investigation into the Debtor's Financial Affairs**

15.     In addition to the Adversary Proceeding, the Trustee has conducted a comprehensive financial investigation of the Debtor's financial affairs, including the Debtor's potential interest in Cambridge Omni, LLC ("Cambridge Omni") and Omni Navitas Holdings, LLC ("Omni Navitas").

16.     The Trustee held an initial 341 Meeting of Creditors on May 5, 2016 and held additional 341 Meetings of Creditors on June 2, 2016 and April 27, 2017.

17.     After the second 341 Meeting of Creditors, the Trustee and his counsel sent numerous requests to the Debtor for documents regarding the financial affairs of the Debtor including all bank accounts of his now defunct real estate development entities, the accounts of Omni Navitas, a solar energy firm, where he is currently employed as CEO, as well as documents regarding ownership interests in Omni Navitas.

18.     Based upon the voluminous documents and information obtained from the Debtor, and reviewed and analyzed by counsel to the Trustee, the focus of the trustee's asset investigation became the Debtor's potential interest in Cambridge Omni and Omni Navitas.

19.     Based upon documents and information obtained from the Debtor, and reviewed and analyzed by the Trustee, Robin maintains a 70.5% membership interest in Cambridge Omni which currently maintains a 42.25% membership interest in Omni Navitas.

20.     Prior to Robin's receipt of her membership interest in Cambridge Omni, the Debtor had held himself out as an owner of Omni Navitas with the ability to grant certain of his creditors membership interests in exchange for the cancellation of existing debt.  The Debtor was previously listed as a co-founder of Omni Navitas.  Robin has virtually no involvement with Omni Navitas though she holds an indirect 30% interest in that that Company.

21.     Accordingly, the Trustee maintains that there is a basis to assert a claim that Robin is holding the Cambridge Omni membership interests for the benefit of the Debtor in either a constructive or resulting trust.

22.     The Debtor and Robin deny the existence of any such constructive or resulting trust and maintain that Robin is the proper owner of the Cambridge Omni membership interests.

23.     As a result of the Adversary Proceeding and the Trustee's comprehensive investigation of the financial affairs of the Debtor, the Parties have agreed to reach a settlement as to all claims that could be brought by the Trustee against Robin and the Debtor.

## II.     THE SETTLEMENT AGREEMENT

24.     The terms of the Agreement provide that pending this Court's approval of the Agreement, the Debtor shall pay the sum of $275,000.00 (the "Settlement Amount") according to the following schedule:

5

8699804v1

1. $25,000.00 by November 15, 2017;
2. $75,000.00 by December 31, 2017;
3. $100,000.00 by March 31, 2018; and
4. 75,000.00 by June 30, 2018.

25.    The Agreement further provides that simultaneously with the execution of the

Agreement, the Debtor and Robin shall deliver a notarized promissory note, pledge agreement,

and mortgage in the form attached to the Agreement as Exhibit A (the "Note"), Exhibit B (the

"Pledge Agreement"), and Exhibit C (the "Mortgage").

26.    The Parties agree that the Note shall be secured by the Pledge Agreement of

Robin's membership interest in Cambridge Omni, and a junior Mortgage on the Marital Home.

The principal amount of the Note is $400,000.00.  Provided the Trustee receives the Settlement

Amount according to the schedule set forth in the Agreement, the Trustee will endorse the Note

as "paid in full" and return the Note and Pledge Agreement to Attorney Cruickshank and record

a discharge of the Mortgage on the Marital Home with the Middlesex County South Registry of

Deeds.  If the Trustee does not receive full payment of the Settlement Amount in accordance

with the terms of the Agreement, the Trustee may enforce the Note against the Debtor and the

collateral for the full amount of $400,000.00 and pursue any and all rights as set forth in the

Pledge Agreement and the Mortgage.

27.    Upon timely payment of the Settlement Amount the Trustee agreed to provide the

Debtor and Robin a general release of all claims.

### III.    LEGAL STANDARD FOR APPROVAL OF SETTLEMENT

28.    Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in pertinent

part:

> On motion by the trustee and after notice and a hearing, the court may
> approve a compromise or settlement.  Notice shall be given to creditors,

6

the United States Trustee, the debtor, and indentured trustees as provided
in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The primary purpose of a compromise or settlement is to avoid the

necessity of determining sharply contested and dubious issues. See, *e.g.,* Wil-Rud Corp. v.

Lynch (In re California Associated Prods. Co.), 183 F.2d 946, 949 (9th Cir. 1950).

29.    Settlements and compromises are a normal part of the bankruptcy process.

Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390

U.S. 414, 424 (1968), quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130

(1939). See Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n.5 (1st

Cir. 1998) ("[c]ompromises are favored in bankruptcy").

30.    Courts traditionally defer to the trustee or debtor-in-possession when examining

the reasonableness of a settlement. See, *e.g.,* Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)

("The responsibility of the bankruptcy judge ... is not to decide the numerous questions of law

and fact raised ... but rather to canvass the issues and see whether the settlement 'fall[s] below

the lowest point in the range of reasonableness.'"); In re Media Cent., Inc., 190 B.R. 316 (E.D.

Tenn. 1994) (court presumed trustee had subjected settlement to his independent review and

analysis where trustee recommended approval of proposed compromise and settlement); see also

9 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed.1993) (to minimize

litigation and expedite the administration of a bankruptcy estate, "[c]ompromises are favored in

bankruptcy.").

31.    The First Circuit Court of Appeals has described the test to be used by

Bankruptcy Courts called upon to approve or reject proposed compromises and settlements as

follows:

> A bankruptcy judge has the authority to approve a compromise of
> a claim pursuant to Bankruptcy Rule 9019(a). The ultimate issue

8699804v1

on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (quoting In re Boston & Providence R.R., 673 F.2d. 11, 12 (1st Cir. 1982)).  The specific factors which a bankruptcy court considers when making this determination include:  (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.  In re Anolik, 107 B.R. 427, 429 (D. Mass. 1989).

Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).

32.     The duty of a Chapter 7 trustee, in considering whether or not to settle a claim, is "to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain case."  In re C.R. Stone Concrete Contractors, Inc., 346 B.R. 32, 49 (Bankr. D. Mass. 2006).

33.     The Trustee believes that the Agreement is in the best interests of the bankruptcy estate.  In the Trustee's business judgment, the payment of the $275,000.00 Settlement Amount and the delivery of the Note, Pledge Agreement, and Mortgage as security for payment of the Settlement Amount represents a favorable resolution of the Controversy given (i) that the Debtor's interest in the Marital Home is fully encumbered and the only equity for the estate through a sale of the Marital Home by the Trustee would have been through the Carve Out Payment which is $185,000.00 less than the Settlement Amount; (ii) the legal uncertainty regarding the Trustee's constructive or resulting trust claim concerning Robin's membership interest in Cambridge Omni which is an indirect minority interest in Omni Navitas; (iii) that the Trustee was able to reach this settlement without having to continue with what would likely be costly and protracted litigation in the Adversary Proceeding and without having to initiate a new

8699804v1

adversary proceeding concerning the constructive trust and/or resulting trust claims against

Robin; (iv) that Robin and the Debtor have asserted legal and factual defenses which present a

material risk to the Trustee's likelihood of success of recovery on the Adversary Proceeding and

on the constructive and resulting trust claims if those claims were to be litigated; (v) the

uncertainty of the amount of actual recovery even if successful on the constructive or resulting

trust claims given that the membership interest is an indirect minority interest in a start-up

company in the solar energy space that has not to date operated profitably; and (vi) that the only

other funds available for distribution consist of $22,000.00 which represents a recovery of a

preferential transfer from the Debtor's sister.

WHEREFORE, for all of the foregoing reasons, John O. Desmond, the duly appointed

Chapter 7 Trustee of the above-captioned bankruptcy estate, respectfully requests that the Court

enter an Order: (i) allowing this Motion; (ii) approving the Agreement; (iii) authorizing the

Trustee to execute any documents that may be reasonably required to effectuate the terms of the

compromise contained in the Agreement; and (iv) granting such other and further relief as just

and necessary.

8699804v1

Respectfully submitted,

JOHN O. DESMOND, CHAPTER 7
TRUSTEE OF THE ESTATE OF
JAMES F. MCAULIFFE

By his counsel,


_____/s/ Anthony R. Leone_____
Thomas S. Vangel, Esq. BBO #552386
Anthony R. Leone, Esq. BBO #681760
Murtha Cullina LLP
99 High Street
Boston, MA 02110
617-457-4000 Telephone
617-482-3868 Facsimile
tvangel@murthalaw.com
aleone@murthalaw.com

Dated:  November 14, 2017

8699804v1